

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-111-CV**

HN TEXAS PROPERTIES, L.P.                                    APPELLANT

V.

DAVID H. COX, INDIVIDUALLY                                   APPELLEE
AND ON BEHALF OF THE
ESTATE OF DAVID WILLIAM
COX, DECEASED AND ON
BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES OF
DAVID WILLIAM COX, DECEASED

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant HN Texas Properties, L.P. brings this accelerated, interlocutory

appeal of the trial court's order denying its motion to dismiss the health care

---

[1] *See* Tex. R. App. P. 47.4.

liability claims of Appellee David H. Cox, individually and on behalf of the estate of David William Cox, deceased and on behalf of all wrongful death beneficiaries of David William Cox, deceased. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008). In three issues, HN argues that Cox's civil practice and remedies code section 74.351(a) expert report is neither authored by a physician qualified to render an expert opinion with regard to the claims against HN nor sufficient to comply with section 74.351's statutory requirements. *See id*. § 74.351(a), (*l*) (Vernon Supp. 2009), § 74.402 (Vernon 2005). We will affirm in part and reverse and remand in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to the report of Kenneth Mitchell, M.D., on April 6, 2006, David William Cox fell from his porch and landed on his back. He was taken to Lake Granbury Medical Center and diagnosed with multiple bilateral rib fractures, a small hematoma in the left pleural space, posterior left lung contusion, and a fracture of the transverse process of the L1 and L2 vertebra. The hospital discharged David William two days later, but he returned to the hospital on April 11, 2006, complaining of shortness of breath and pain. Two days later, he was transferred to HN's facility, where he stayed until April 22, 2006, when he was transferred to Campbell Health System Emergency Room after complaining of shortness of breath; an x-ray showed a large left pleural

2

effusion.  David William underwent a thoracentesis during which 2000 cc of bloody fluid was removed, but the fluid reaccumulated, and a chest tube was placed.  David William died on May 2, 2006.  The autopsy showed that he died from extensive thromboemboli that extended from the deep veins in the legs to the right and left pulmonary arteries.

Cox filed a health care liability claim against HN in July 2008.[2]  He later filed an amended petition alleging vicarious liability against HN.  Cox timely served HN with Dr. Mitchell's report.  HN timely filed objections to Dr. Mitchell's report on the grounds that Dr. Mitchell is not qualified to offer an expert opinion as to HN's potential liability and that he failed to sufficiently set forth in the report the applicable standards of care, how HN breached the standards of care, and how HN's alleged breach of the standards of care caused David William's injuries.  HN also filed a motion to dismiss Cox's claims against it.  The trial court overruled HN's objections to Dr. Mitchell's report and denied the motion to dismiss.

---

[2] Cox also sued Weatherford Texas Hospital Company, LLC; Campbell Health System; Joseph Zadeh, M.D.; Tom Tarkenton, D.O.; Robert Gene Garmon, D.O.; Andrew Scott Walker, M.D.; and Andrew Scott Walker M.D., P.A.  None of these defendants are parties to this appeal.

### III. STANDARD OF REVIEW

We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986)). We may not substitute our judgment for the trial court's judgment. *Id*. Nor can we determine that the trial court abused its discretion merely because we would have decided the matter differently. *Downer*, 701 S.W.2d at 242.

### IV. EXPERT REPORT REQUIREMENTS

Civil practice and remedies code section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id*.

4

§ 74.351(r)(6). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *See id*. § 74.351(a), (c), (*l*). A trial court must grant a motion to dismiss based on the alleged inadequacy of an expert report only if it finds, after a hearing, "that the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id*. § 74.351(*l*).

The information in the report does not have to meet the same requirements as evidence offered in a summary judgment proceeding or at trial, and the report need not marshal all the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in the statute—standard of care, breach, and causation. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001); *Thomas v. Alford*, 230 S.W.3d 853, 856 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In detailing these elements, the supreme court has made clear that an expert report must provide enough information to fulfill two purposes if it is to constitute a good faith effort: the report must (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 879; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A report does not fulfill these two purposes if it merely

5

states the expert's conclusions or if it omits any of the statutory requirements. *Palacios*, 46 S.W.3d at 879.

Under section 74.402, a person may qualify as an expert witness on the issue of whether a health care provider departed from accepted standards of care only if the person

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id*. § 74.402(b). In determining whether a witness is qualified on the basis of training or experience under section 74.402(b)(3), the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim and (2) is actively practicing health care in rendering health care related services relevant to the claim. *Id*. § 74.402(c).

6

## V.  DR. MITCHELL'S QUALIFICATIONS

In its first issue, HN argues that the trial court abused its discretion by denying its motion to dismiss Cox's health care liability claim because Dr. Mitchell is not qualified to render an expert opinion against HN.  According to HN, "[n]owhere in Dr. Mitchell's report or CV is there anything to suggest that Dr. Mitchell is qualified to discuss the standard of care applicable to a nursing home or the nurses who provided care for [David William] at the facility."  HN contends that Cox's claim against it is a claim against a nursing home for inadequate nursing care but that Dr. Mitchell's report and CV contain nothing to show that he is qualified to opine about how nurses at a nursing home breached the standard of nursing care rendered to David William.

Our analysis of Dr. Mitchell's qualifications under section 74.351 is limited to the four corners of the report and curriculum vitae.  *Polone v. Shearer*, 287 S.W.3d 229, 238 (Tex. App.—Fort Worth 2009, no pet.).  Dr. Mitchell stated the following about his qualifications and medical expertise in his report:

> I graduated, *cum laude*, from the University of Texas in Austin in 1981 with a degree in Biology.  I received my Medical Degree from the University of Texas Health Science Center at Houston in 1985.  I then completed my internship and residency in Internal Medicine at the University of Texas Health Science Center at Houston, Hermann Hospital, St. Joseph Hospital, and MD Anderson Cancer Institute in 1988.  I was board-certified by the

American Board of Internal Medicine in 1988. I have been licensed to practice medicine, continuously, in the state of Texas since 1986, and was in active practice during the time Mr. Cox was cared for by [HN] . . . . Presently, I am practicing as an Internal Medicine physician with St. David's North Austin Medical Center where I also serve as Vice-President of Medical Affairs and Chief Medical Officer. I am a member of several medical societies and organizations including the Travis County Medical Society and Texas Medical Association. I am on the active admitting staff at North Austin Medical Center, Cornerstone Hospital of Austin, and Seton Medical Center in Austin. From 1990-1996, I was on the Board of Directors of the American Heart Association, Capital Area Division and served as the Board President from 1995-1996. I have served on the Physician Advisory Committee of Blue Cross Blue Shield of Texas, Sanus/NYLCare, the Humana Quality Improvement Committee and Aetna Quality Improvement Committee in Austin.

Dr. Mitchell's curriculum vitae contains information regarding his qualifications and experience that mirrors the information in the report: he is the Vice-President of Medical Affairs and Chief Medical Officer at St. David's North Austin Medical Center, and he was previously employed as a physician in the Department of Internal Medicine at The Austin Diagnostic Clinic and at Austin Regional Clinic. Under "Other Professional Experience," Dr. Mitchell states, "Affiliated Hospitalist rounding with Hospital Internists of Austin, North Austin Medical Center"; "Medical Director, Transitional Care Unit"; and "Macgregor Medical Clinic, After Hours Physician."

Dr. Mitchell's report and curriculum vitae demonstrate that he has experience and expertise as an internal medicine physician and as a medical

8

administrator, but there is nothing in his report or curriculum vitae demonstrating or explaining that he has knowledge of or is familiar with the accepted standard of care in this case for nurses or that he is qualified on the basis of training or experience to offer an expert opinion regarding the accepted standard of care in this case for nurses. *See Jones v. Ark-La-Tex Visiting Nurses, Inc.*, 128 S.W.3d 393, 396–97 (Tex. App.—Texarkana 2004, no pet.) (holding that physician was not qualified to opine about nursing standards because his report failed to state his qualifications to opine about the standard of care for nurses monitoring a patient in a home healthcare setting and because his curriculum vitae did not contain information showing he is an expert on nursing care); *cf. San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 812–14 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (overruling argument that expert physician was not qualified to opine about nursing care because expert indicated in his report that he had either trained, served as a consultant to, or observed health care providers in the same fields as the defendants and stated that he is familiar with the applicable standard of care for both nurses and physicians); *Nexion Health at Humble, Inc. v. Whitley*, No. 14-09-00052-CV, 2009 WL 2589221, at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet. h.) (mem. op.) (reasoning that unlike the facts of two other cases in which the expert was not qualified to opine about the

9

standard of care for nurses, the expert in this case was qualified to opine about the standard of nursing home care because he stated that he had experience with nursing home patients and was familiar with the appropriate standard of care).  Though Dr. Mitchell is not automatically disqualified from giving an expert opinion regarding the accepted standard of care for HN's nurses simply because he is an internal medicine physician instead of a nurse, we may not through inferences or otherwise fill in the gaps in his report where he fails to detail why or how he is qualified to opine about the applicable standard of care for HN's nurses.  *See Wright*, 79 S.W.3d at 53; *Methodist Hosp. v. Shepherd-Sherman*, No. 14-08-01090-CV, 2009 WL 2568347, at *3 (Tex. App.—Houston [14th Dist.] Aug. 20, 2009, no pet.).  We hold that Dr. Mitchell did not demonstrate that he is qualified to opine about the standard of medical care applicable to HN's nurses and that the trial court abused its discretion by overruling HN's objection and by denying its motion to dismiss the claims against it based on the acts and omissions of the nurses on this ground.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b).  We sustain HN's first issue.

## VI.  SUFFICIENCY OF DR. MITCHELL'S REPORT

In its second issue, HN argues that Dr. Mitchell's report does not represent an objective good faith effort to comply with the definition of an expert report because it fails to provide a fair summary regarding the standard

10

of care applicable to HN, the manner in which HN breached the standard of care, and the causal relationship between the alleged breach and David William's death.

Dr. Mitchell stated the following in his report regarding the standard of care applicable to HN:

•The standard of care required HN and its nurses and staff to identify David William as being at risk for the development of pulmonary embolism and thrombotic complications and take necessary precautions against the development of thrombotic conditions. Risk factors present in David William that necessitated identifying him as a patient at risk for thrombotic complications included that David William was obese, immobile, unable to participate in exercise or therapy, and had an elevated homocysteine level, which is known to be a risk factor for thrombotic complications and pulmonary embolism.

•Precautions that HN and its nurses and staff should have taken to prevent thrombotic complications included use of TED hose, sequential compression hose, low-dose heparin therapy or IVC filter placement.

•In reasonable medical probability, if precautions against the development of pulmonary embolism and thrombotic complications had been taken, David William would not have developed the massive pulmonary emboli which proximately caused his death and he would be alive today.

Dr. Mitchell stated the following in his report regarding the standard of care applicable to Dr. Zadeh:

•The standard of care required Dr. Zadeh to identify David William as a patient at risk for thrombotic complications due to his multiple risk factors and order precautions against the development of

11

pulmonary embolism and thrombotic complications. David William was a patient who was obese, immobile, unable to participate in exercise or therapy, and had an elevated homocysteine level, which is known to be a risk factor for thrombotic complications and pulmonary embolism.

•Treatment to prevent thrombotic complications should have included the use of TED hose, sequential compression hose, low-dose heparin therapy, or IVC filter placement.

•In reasonable medical probability, if the foregoing precautions against the development of pulmonary embolism and thrombotic complications had been taken, David William would not have developed the massive pulmonary emboli which proximately caused his death and he would be alive today.

The standard of care that Dr. Mitchell identified for Dr. Garmon, Dr. Tarkenton,

and Dr. Walker included some variation of the following:

•The standard of care required them to order precautions against the development of pulmonary embolism and thrombotic complications for David William, a patient with multiple risk factors that placed him at risk for the development of thrombotic complications including obesity, prolonged immobility, inability to participate in exercise or therapy, and who had an elevated homocysteine level, which is known to be a risk factor for thrombotic complications and pulmonary embolism.

•Precautions that they should have ordered included TED hose, sequential compression hose, low-dose heparin therapy or IVC filter placement.

•In reasonable medical probability, if these precautions against the development of pulmonary embolism and thrombotic complications had been taken, David William would not have developed the massive pulmonary emboli which proximately caused his death and he would be alive today.

12

With the exception of some minor variations, Dr. Mitchell's report sets forth virtually identical standards of care applicable to both HN's nurses and Dr. Zadeh, Dr. Garmon, Dr. Tarkenton, and Dr. Walker, the defendant physicians. The report thus does not differentiate between the standard of care applicable to HN's nurses and the standard of care applicable to the physicians. Although an expert is not prohibited from applying the same standard of care to more than one health care provider (so long as they all owe the same duty to the patient), there is nothing in the report stating or somehow providing that the standard of care that applies to HN's nurses is the same standard of care that applies to the physicians. *See Polone*, 287 S.W.3d at 234–35 (holding report that set forth single standard of care applicable to physician and physician's assistant insufficient to represent a good faith effort because "[a]lthough the standards of care might be the same for both [the physician and physician's assistant], the report does not specifically state as much"); *cf. In re Stacy K. Boone, P.A.*, 223 S.W.3d 398, 405–06 (Tex. App.—Amarillo 2006, orig. proceeding) (holding that a single standard of care applicable to physicians and physician's assistant was sufficient because all participated in administering treatment). The report impermissibly required the trial court to infer that HN's nurses—who are not physicians—shared standards of care with the physicians requiring the identification of David William's risk for thrombotic complications

13

and the taking of appropriate precautions to prevent such complications, including using hose and an IVC filter placement—"precautions" that HN contends nurses *do not* undertake. We hold that the trial court abused its discretion by overruling HN's objection and by denying its motion to dismiss as to the claims based on the acts and omissions of the nurses on the ground that Dr. Mitchell's report is deficient for failing to adequately set forth the standard of care applicable to HN's nurses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6).

Like the standards of care applicable to both HN's nurses and the physicians, Dr. Mitchell's opinion regarding how HN's nurses allegedly breached the applicable standard of care is virtually identical to his opinion of how the physicians allegedly breached the applicable standard of care: failing to institute, order, or provide precautions—use of TED hose, sequential compression hose, low-dose heparin therapy, or IVC filter placement—against the development of pulmonary embolism and thrombotic complications. Because Dr. Mitchell's report does not differentiate between what the nurses did wrong and what the physicians did wrong, the report is insufficient to identify how HN's nurses allegedly breached the applicable standard of care. *See Jones*, 128 S.W.3d at 397. Further, because Dr. Mitchell's report did not sufficiently identify the standard of care applicable to HN's nurses and how

14

HN's nurses allegedly breached the standard of care, the report cannot sufficiently identify how HN's nurses' alleged breach of the standard of care caused David William's death.

We hold that the trial court abused its discretion by overruling HN's objections and by denying its motion to dismiss on the grounds that Dr. Mitchell's report is deficient for failing to adequately set forth how HN's nurses allegedly breached the applicable standard of care and the causal relationship between the breach and David William's death. *See id*. We sustain HN's second issue.

In HN's "Issues Presented," it states that its third issue is whether the trial court abused its discretion by failing to dismiss Cox's claims against it with prejudice. HN asserts no argument to support this "issue." To the extent HN intended this as an independent issue for appellate review, we overrule it. *See Polone*, 287 S.W.3d at 239–40 (holding that remand, not dismissal, is the appropriate remedy after a trial court's ruling that a report is adequate is reversed on appeal) (citing *Leland v. Brandal*, 257 S.W.3d 204, 207–08 (Tex. 2008)).

## VII. ALTERNATIVE BASIS FOR VICARIOUS LIABILITY—DR. ZADEH

Cox pleaded in his original petition and second amended original petition that until April 22, 2006, David William was a patient at HN's facility "under

15

the care of Dr. Zadeh." In Cox's second amended petition, he alleged vicarious liability against HN for Dr. Zadeh's acts or omissions.[3] In setting forth the standard of care applicable to HN, how HN allegedly breached the standard of care, and the causal connection between HN's alleged breach and David William's injuries, Dr. Mitchell referred not only to HN's nurses but also to HN's "staff." The record does not demonstrate that HN filed any special exceptions to Cox's pleadings. Those pleadings can be construed to allege vicarious liability against HN for the actions or inactions of its staff, which may include Dr. Zadeh. *See Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) (stating that pleadings are to be liberally construed when there are no special exceptions). HN has not challenged Dr. Mitchell's report insofar as it pertains to Dr. Zadeh; it has only challenged the report as it pertains to its nurses. Thus, to the extent the trial court denied HN's motion to dismiss on the basis that the report is adequate as to Cox's allegations that HN is vicariously liable for Dr. Zadeh's actions or inactions, the trial court did not abuse its discretion in doing so.

---

[3] The petition alleged, "Furthermore, Defendant [HN] is vicariously liable and/or liable through respondeat superior by and through their actual and ostensible agents, employees, vice principals, borrowed servants, and/or managing and/or limited partners, including, but not limited to Defendant Zadeh . . . ."

16

## VIII. CONCLUSION

The record does not demonstrate that the trial court has already granted Cox a section 74.351(c) extension.[4]  Having sustained HN's first and second issues, we reverse the trial court's order denying HN's motion to dismiss and remand the case to the trial court to determine whether to dismiss Cox's claim against HN based on the acts or omissions of its nurses or to grant Cox a thirty-day extension to cure the deficiency.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), (c).  To the extent the trial court denied HN's motion to dismiss on the basis of HN's vicarious liability for Dr. Zadeh, we affirm the trial court's order.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, MCCOY, and MEIER, JJ.

DELIVERED:  October 15, 2009

---

[4] Cox included a motion for extension of time pursuant to section 74.351(c) in his response to HN's objections.

17