COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-111-CV

 

 

HN
TEXAS PROPERTIES, L.P.                                                APPELLANT

 

                                                   V.

 

DAVID H. COX, INDIVIDUALLY                                                 APPELLEE

AND ON BEHALF OF THE

ESTATE OF DAVID WILLIAM

COX, DECEASED AND ON

BEHALF OF ALL WRONGFUL

DEATH BENEFICIARIES OF

DAVID WILLIAM COX, DECEASED

 

                                              ------------

 

           FROM THE 236TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant HN Texas Properties, L.P. brings this
accelerated, interlocutory appeal of the trial court=s order
denying its motion to dismiss the health care liability claims of Appellee
David H. Cox, individually and on behalf of the estate of David William Cox,
deceased and on behalf of all wrongful death beneficiaries of David William
Cox, deceased.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 51.014(a)(9)
(Vernon 2008).  In three issues, HN
argues that Cox=s civil practice and remedies
code section 74.351(a) expert report is neither authored by a physician
qualified to render an expert opinion with regard to the claims against HN nor
sufficient to comply with section 74.351=s
statutory requirements.  See id. '
74.351(a), (l) (Vernon Supp. 2009), ' 74.402
(Vernon 2005).  We will affirm in part
and reverse and remand in part.

II.  Factual and Procedural Background








According to the report of Kenneth Mitchell,
M.D., on April 6, 2006, David William Cox fell from his porch and landed on his
back.  He was taken to Lake Granbury Medical
Center and diagnosed with multiple bilateral rib fractures, a small hematoma in
the left pleural space, posterior left lung contusion, and a fracture of the
transverse process of the L1 and L2 vertebra. 
The hospital discharged David William two days later, but he returned to
the hospital on April 11, 2006, complaining of shortness of breath and
pain.  Two days later, he was transferred
to HN=s
facility, where he stayed until April 22, 2006, when he was transferred to
Campbell Health System Emergency Room after complaining of shortness of breath;
an x-ray showed a large left pleural effusion. 
David William underwent a thoracentesis during which 2000 cc of bloody
fluid was removed, but the fluid reaccumulated, and a chest tube was
placed.  David William died on May 2,
2006.  The autopsy showed that he died
from extensive thromboemboli that extended from the deep veins in the legs to
the right and left pulmonary arteries.

Cox filed a health care liability claim against
HN in July 2008.[2]  He later filed an amended petition alleging
vicarious liability against HN.  Cox
timely served HN with Dr. Mitchell=s
report.  HN timely filed objections to
Dr. Mitchell=s report on the grounds that Dr.
Mitchell is not qualified to offer an expert opinion as to HN=s
potential liability and that he failed to sufficiently set forth in the report
the applicable standards of care, how HN breached the standards of care, and
how HN=s
alleged breach of the standards of care caused David William=s
injuries.  HN also filed a motion to
dismiss Cox=s claims against it.  The trial court overruled HN=s
objections to Dr. Mitchell=s report
and denied the motion to dismiss.








III.  Standard of Review

We review a trial court=s order
on a motion to dismiss a health care liability claim for an abuse of
discretion.  Jernigan v. Langley,
195 S.W.3d 91, 93 (Tex. 2006).  A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner,
or if it acts without reference to any guiding rules or principles.  Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002) (citing Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986)).  We may not
substitute our judgment for the trial court=s
judgment.  Id.  Nor can we determine that the trial court
abused its discretion merely because we would have decided the matter
differently.  Downer, 701 S.W.2d
at 242.

IV.  Expert Report Requirements








Civil practice and remedies code section 74.351
provides that, within 120 days of filing suit, a plaintiff must serve expert
reports for each physician or health care provider against whom a liability
claim is asserted.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a).  An expert report is a written report by an
expert that provides a fair summary of the expert=s
opinions regarding the applicable standard of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standard, and the causal relationship between that failure and the injury,
harm, or damages claimed.  Id. ' 74.351(r)(6).  If a claimant timely furnishes an expert
report, a defendant may file a motion challenging the report=s
adequacy.  See id. ' 74.351(a),
(c), (l).  A trial court must
grant a motion to dismiss based on the alleged inadequacy of an expert report
only if it finds, after a hearing, Athat the
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.  Id. ' 74.351(l).








The information in the report does not have to
meet the same requirements as evidence offered in a summary judgment proceeding
or at trial, and the report need not marshal all the plaintiff=s proof,
but it must include the expert=s
opinions on each of the elements identified in the statuteCstandard
of care, breach, and causation.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878B79 (Tex.
2001); Thomas v. Alford, 230 S.W.3d 853, 856 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).  In
detailing these elements, the supreme court has made clear that an expert report
must provide enough information to fulfill two purposes if it is to constitute
a good faith effort:  the report must
(1) inform the defendant of the specific conduct the plaintiff has called
into question and (2) provide a basis for the trial court to conclude that
the plaintiff=s claims have merit.  Palacios, 46 S.W.3d at 879; Gray v.
CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  A report
does not fulfill these two purposes if it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Palacios, 46 S.W.3d at 879.

Under section 74.402, a person may qualify as an
expert witness on the issue of whether a health care provider departed from
accepted standards of care only if the person

(1) is practicing health
care in a field of practice that involves the same type of care or treatment as
that delivered by the defendant health care provider, if the defendant health
care provider is an individual, at the time the testimony is given or was
practicing that type of health care at the time the claim arose;

 

(2) has knowledge of
accepted standards of care for health care providers for the diagnosis, care,
or treatment of the illness, injury, or condition involved in the claim; and

 

(3) is qualified on the
basis of training or experience to offer an expert opinion regarding those
accepted standards of health care.

 

Id. ' 74.402(b).  In determining whether a witness is qualified
on the basis of training or experience under section 74.402(b)(3), the court
shall consider whether, at the time the claim arose or at the time the testimony
is given, the witness (1) is certified by a licensing agency of one or more
states of the United States or a national professional certifying agency, or
has other substantial training or experience, in the area of health care
relevant to the claim and (2) is actively practicing health care in rendering
health care related services relevant to the claim.  Id. ' 74.402(c).








V.  Dr. Mitchell=s
Qualifications

In its first issue, HN argues that the trial
court abused its discretion by denying its motion to dismiss Cox=s health
care liability claim because Dr. Mitchell is not qualified to render an expert
opinion against HN.  According to HN, A[n]owhere
in Dr. Mitchell=s report or CV is there anything
to suggest that Dr. Mitchell is qualified to discuss the standard of care
applicable to a nursing home or the nurses who provided care for [David
William] at the facility.@ 
HN contends that Cox=s claim
against it is a claim against a nursing home for inadequate nursing care but that
Dr. Mitchell=s report and CV contain nothing
to show that he is qualified to opine about how nurses at a nursing home
breached the standard of nursing care rendered to David William.

Our analysis of Dr. Mitchell=s
qualifications under section 74.351 is limited to the four corners of the
report and curriculum vitae.  Polone
v. Shearer, 287 S.W.3d 229, 238 (Tex. App.CFort
Worth 2009, no pet.).  Dr. Mitchell
stated the following about his qualifications and medical expertise in his
report:








I graduated, cum laude, from the University of Texas in Austin
in 1981 with a degree in Biology.  I
received my Medical Degree from the University of Texas Health Science Center
at Houston in 1985.  I then completed my
internship and residency in Internal Medicine at the University of Texas Health
Science Center at Houston, Hermann Hospital, St. Joseph Hospital, and MD
Anderson Cancer Institute in 1988.  I was
board-certified by the American Board of Internal Medicine in 1988.  I have been licensed to practice medicine,
continuously, in the state of Texas since 1986, and was in active practice
during the time Mr. Cox was cared for by [HN] . . . .  Presently, I am practicing as an Internal
Medicine physician with St. David=s North Austin Medical Center where I also serve
as Vice-President of Medical Affairs and Chief Medical Officer.  I am a member of several medical societies
and organizations including the Travis County Medical Society and Texas Medical
Association.  I am on the active
admitting staff at North Austin Medical Center, Cornerstone Hospital of Austin,
and Seton Medical Center in Austin.  From
1990-1996, I was on the Board of Directors of the American Heart Association,
Capital Area Division and served as the Board President from 1995-1996.  I have served on the Physician Advisory
Committee of Blue Cross Blue Shield of Texas, Sanus/NYLCare, the Humana Quality
Improvement Committee and Aetna Quality Improvement Committee in Austin.

 

Dr. Mitchell=s curriculum vitae contains
information regarding his qualifications and experience that mirrors the
information in the report:  he is the
Vice-President of Medical Affairs and Chief Medical Officer at St. David=s North
Austin Medical Center, and he was previously employed as a physician in the
Department of Internal Medicine at The Austin Diagnostic Clinic and at Austin
Regional Clinic.  Under AOther
Professional Experience,@ Dr. Mitchell states, AAffiliated
Hospitalist rounding with Hospital Internists of Austin, North Austin Medical
Center@; AMedical
Director, Transitional Care Unit@; and AMacgregor
Medical Clinic, After Hours Physician.@













Dr. Mitchell=s report
and curriculum vitae demonstrate that he has experience and expertise as an
internal medicine physician and as a medical administrator, but there is
nothing in his report or curriculum vitae demonstrating or explaining that he
has knowledge of or is familiar with the accepted standard of care in this case
for nurses or that he is qualified on the basis of training or experience to
offer an expert opinion regarding the accepted standard of care in this case
for nurses.  See Jones v. Ark-La-Tex
Visiting Nurses, Inc., 128 S.W.3d 393, 396B97 (Tex.
App.CTexarkana
2004, no pet.) (holding that physician was not qualified to opine about nursing
standards because his report failed to state his qualifications to opine about
the standard of care for nurses monitoring a patient in a home healthcare
setting and because his curriculum vitae did not contain information showing he
is an expert on nursing care); cf. San Jacinto Methodist Hosp. v. Bennett,
256 S.W.3d 806, 812B14 (Tex. App.CHouston
[14th Dist.] 2008, no pet.) (overruling argument that expert physician was not
qualified to opine about nursing care because expert indicated in his report
that he had either trained, served as a consultant to, or observed health care
providers in the same fields as the defendants and stated that he is familiar with
the applicable standard of care for both nurses and physicians); Nexion
Health at Humble, Inc. v. Whitley, No. 14-09-00052-CV, 2009 WL 2589221, at
*2B3 (Tex.
App.CHouston
[14th Dist.] Aug. 25, 2009, no pet. h.) (mem. op.) (reasoning that unlike the
facts of two other cases in which the expert was not qualified to opine about
the standard of care for nurses, the expert in this case was qualified to opine
about the standard of nursing home care because he stated that he had
experience with nursing home patients and was familiar with the appropriate
standard of care).  Though Dr. Mitchell
is not automatically disqualified from giving an expert opinion regarding the
accepted standard of care for HN=s nurses
simply because he is an internal medicine physician instead of a nurse, we may
not through inferences or otherwise fill in the gaps in his report where he
fails to detail why or how he is qualified to opine about the applicable
standard of care for HN=s nurses.  See Wright, 79 S.W.3d at 53; Methodist
Hosp. v. Shepherd-Sherman, No. 14-08-01090-CV, 2009 WL 2568347, at *3 (Tex.
App.CHouston
[14th Dist.] Aug. 20, 2009, no pet.).  We
hold that Dr. Mitchell did not demonstrate that he is qualified to opine about
the standard of medical care applicable to HN=s nurses
and that the trial court abused its discretion by overruling HN=s
objection and by denying its motion to dismiss the claims against it based on
the acts and omissions of the nurses on this ground.  See Tex. Civ. Prac. & Rem. Code Ann.
' 74.402(b).  We sustain HN=s first
issue.

VI.  Sufficiency of Dr. Mitchell=s
Report








In its second issue, HN argues that Dr. Mitchell=s report
does not represent an objective good faith effort to comply with the definition
of an expert report because it fails to provide a fair summary regarding the
standard of care applicable to HN, the manner in which HN breached the standard
of care, and the causal relationship between the alleged breach and David
William=s death.

Dr. Mitchell stated the following in his report
regarding the standard of care applicable to HN:

$The standard of care
required HN and its nurses and staff to identify David William as being at risk
for the development of pulmonary embolism and thrombotic complications and take
necessary precautions against the development of thrombotic conditions.  Risk factors present in David William that
necessitated identifying him as a patient at risk for thrombotic complications
included that David William was obese, immobile, unable to participate in
exercise or therapy, and had an elevated homocysteine level, which is known to
be a risk factor for thrombotic complications and pulmonary embolism.

 

$Precautions that HN and
its nurses and staff should have taken to prevent thrombotic complications
included use of TED hose, sequential compression hose, low-dose heparin therapy
or IVC filter placement.

 

$In reasonable medical
probability, if precautions against the development of pulmonary embolism and
thrombotic complications had been taken, David William would not have developed
the massive pulmonary emboli which proximately caused his death and he would be
alive today.

 

Dr. Mitchell stated the following in his report regarding the standard
of care applicable to Dr. Zadeh:








$The standard of care
required Dr. Zadeh to identify David William as a patient at risk for
thrombotic complications due to his multiple risk factors and order precautions
against the development of pulmonary embolism and thrombotic
complications.  David William was a
patient who was obese, immobile, unable to participate in exercise or therapy,
and had an elevated homocysteine level, which is known to be a risk factor for
thrombotic complications and pulmonary embolism.

 

$Treatment to prevent
thrombotic complications should have included the use of TED hose, sequential
compression hose, low-dose heparin therapy, or IVC filter placement.

 

$In reasonable medical
probability, if the foregoing precautions against the development of pulmonary
embolism and thrombotic complications had been taken, David William would not
have developed the massive pulmonary emboli which proximately caused his death
and he would be alive today.

 

The standard of care that Dr. Mitchell identified for Dr. Garmon, Dr.
Tarkenton, and Dr. Walker included some variation of the following:

$The standard of care
required them to order precautions against the development of pulmonary
embolism and thrombotic complications for David William, a patient with
multiple risk factors that placed him at risk for the development of thrombotic
complications including obesity, prolonged immobility, inability to participate
in exercise or therapy, and who had an elevated homocysteine level, which is
known to be a risk factor for thrombotic complications and pulmonary embolism.

 

$Precautions that they
should have ordered included TED hose, sequential compression hose, low-dose
heparin therapy or IVC filter placement.

 

$In reasonable medical
probability, if these precautions against the development of pulmonary embolism
and thrombotic complications had been taken, David William would not have
developed the massive pulmonary emboli which proximately caused his death and he
would be alive today.

 













With the exception of some minor variations, Dr.
Mitchell=s report
sets forth virtually identical standards of care applicable to both HN=s nurses
and Dr. Zadeh, Dr. Garmon, Dr. Tarkenton, and Dr. Walker, the defendant
physicians.  The report thus does not
differentiate between the standard of care applicable to HN=s nurses
and the standard of care applicable to the physicians.  Although an expert is not prohibited from
applying the same standard of care to more than one health care provider (so
long as they all owe the same duty to the patient), there is nothing in the
report stating or somehow providing that the standard of care that applies to
HN=s nurses
is the same standard of care that applies to the physicians.  See Polone, 287 S.W.3d at 234B35
(holding report that set forth single standard of care applicable to physician
and physician=s assistant insufficient to
represent a good faith effort because A[a]lthough
the standards of care might be the same for both [the physician and physician=s
assistant], the report does not specifically state as much@); cf.
In re Stacy K. Boone, P.A., 223 S.W.3d 398, 405B06 (Tex.
App.CAmarillo
2006, orig. proceeding) (holding that a single standard of care applicable to
physicians and physician=s assistant was sufficient because
all participated in administering treatment). 
The report impermissibly required the trial court to infer that HN=s nursesCwho are
not physiciansCshared standards of care with
the physicians requiring the identification of David William=s risk
for thrombotic complications and the taking of appropriate precautions to
prevent such complications, including using hose and an IVC filter placementCAprecautions@ that HN
contends nurses do not undertake. 
We hold that the trial court abused its discretion by overruling HN=s
objection and by denying its motion to dismiss as to the claims based on the
acts and omissions of the nurses on the ground that Dr. Mitchell=s report
is deficient for failing to adequately set forth the standard of care
applicable to HN=s nurses.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(l),
(r)(6).








Like the standards of care applicable to both HN=s nurses
and the physicians, Dr. Mitchell=s
opinion regarding how HN=s nurses allegedly breached the
applicable standard of care is virtually identical to his opinion of how the
physicians allegedly breached the applicable standard of care:  failing to institute, order, or provide precautionsCuse of
TED hose, sequential compression hose, low-dose heparin therapy, or IVC filter
placementCagainst the development of
pulmonary embolism and thrombotic complications.  Because Dr. Mitchell=s report
does not differentiate between what the nurses did wrong and what the
physicians did wrong, the report is insufficient to identify how HN=s nurses
allegedly breached the applicable standard of care.  See Jones, 128 S.W.3d at
397.  Further, because Dr. Mitchell=s report
did not sufficiently identify the standard of care applicable to HN=s nurses
and how HN=s nurses allegedly breached the
standard of care, the report cannot sufficiently identify how HN=s nurses= alleged
breach of the standard of care caused David William=s death.

We hold that the trial court abused its
discretion by overruling HN=s
objections and by denying its motion to dismiss on the grounds that Dr.
Mitchell=s report
is deficient for failing to adequately set forth how HN=s nurses
allegedly breached the applicable standard of care and the causal relationship
between the breach and David William=s
death.  See id.  We sustain HN=s second
issue.

In HN=s AIssues
Presented,@ it states that its third issue
is whether the trial court abused its discretion by failing to dismiss Cox=s claims
against it with prejudice.  HN asserts no
argument to support this Aissue.@  To the extent HN intended this as an
independent issue for appellate review, we overrule it.  See Polone, 287 S.W.3d at 239B40
(holding that remand, not dismissal, is the appropriate remedy after a trial
court=s ruling
that a report is adequate is reversed on appeal) (citing Leland v. Brandal,
257 S.W.3d 204, 207B08 (Tex. 2008)).

VII.  Alternative Basis for Vicarious LiabilityCDr.
Zadeh








Cox pleaded in his original petition and second
amended original petition that until April 22, 2006, David William was a
patient at HN=s facility Aunder
the care of Dr. Zadeh.@ 
In Cox=s second amended petition, he
alleged vicarious liability against HN for Dr. Zadeh=s acts
or omissions.[3]  In setting forth the standard of care
applicable to HN, how HN allegedly breached the standard of care, and the
causal connection between HN=s
alleged breach and David William=s
injuries, Dr. Mitchell referred not only to HN=s nurses
but also to HN=s Astaff.@  The record does not demonstrate that HN filed
any special exceptions to Cox=s
pleadings.  Those pleadings can be
construed to allege vicarious liability against HN for the actions or inactions
of its staff, which may include Dr. Zadeh. 
See Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982) (stating that
pleadings are to be liberally construed when there are no special
exceptions).  HN has not challenged Dr.
Mitchell=s report
insofar as it pertains to Dr. Zadeh; it has only challenged the report as it
pertains to its nurses.  Thus, to the
extent the trial court denied HN=s motion
to dismiss on the basis that the report is adequate as to Cox=s
allegations that HN is vicariously liable for Dr. Zadeh=s
actions or inactions, the trial court did not abuse its discretion in doing so.








VIII.  Conclusion

The record does not demonstrate that the trial
court has already granted Cox a section 74.351(c) extension.[4]  Having sustained HN=s first
and second issues, we reverse the trial court=s order
denying HN=s motion to dismiss and remand
the case to the trial court to determine whether to dismiss Cox=s claim
against HN based on the acts or omissions of its nurses or to grant Cox a
thirty-day extension to cure the deficiency. 
See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(b),
(c).  To the extent the trial court
denied HN=s motion to dismiss on the basis
of HN=s
vicarious liability for Dr. Zadeh, we affirm the trial court=s order.

 

 

BILL
MEIER

JUSTICE

PANEL:  LIVINGSTON, MCCOY, and
MEIER, JJ.

DELIVERED:  October 15, 2009











[1]See Tex. R. App. P. 47.4.





[2]Cox also sued Weatherford
Texas Hospital Company, LLC; Campbell Health System; Joseph Zadeh, M.D.; Tom
Tarkenton, D.O.; Robert Gene Garmon, D.O.; Andrew Scott Walker, M.D.; and
Andrew Scott Walker M.D., P.A.  None of
these defendants are parties to this appeal.





[3]The petition alleged, AFurthermore, Defendant
[HN] is vicariously liable and/or liable through respondeat superior by and
through their actual and ostensible agents, employees, vice principals,
borrowed servants, and/or managing and/or limited partners, including, but not
limited to Defendant Zadeh . . . .@





[4]Cox included a motion for
extension of time pursuant to section 74.351(c) in his response to HN=s objections.