

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-325-CV

SHANNON POLONE, P.A.-C. AND          APPELLANTS
FRANCIS R. LONERGAN, M.D.

V.

MONICA SHEARER          APPELLEE

------------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

In these accelerated, interlocutory appeals, Appellants Shannon Polone, P.A.-C. and Francis R. Lonergan, M.D. appeal the trial court's orders denying their motions to dismiss the health care liability claims of Appellee Monica Shearer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(9) (Vernon 2008). In two issues, Polone argues that Shearer failed to comply with civil practice

and remedies code section 74.351 because the medical expert reports that she filed are inadequate and fail to show that the authoring experts are qualified to offer an expert opinion regarding the standard of care applicable to a physician's assistant. *See id*. § 74.351(b), (*l*) (Vernon Supp. 2008). Dr. Lonergan also argues that Shearer failed to file an adequate expert report in compliance with civil practice and remedies code section 74.351, but he contends in two issues that the opinions of the authoring experts are speculative and conclusory and that the experts failed to adequately address Shearer's specific claims. *See id*. We affirm in part and reverse and remand in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Shearer filed a medical malpractice lawsuit against Dr. Lonergan and Polone in January 2008. She alleged that she experienced symptomatic breast problems, including asymmetric breasts and breast pain, at the end of 2004. In November 2005, Polone examined Shearer after Shearer complained of breast pain and dimpling of the skin. A mammogram and sonogram were performed, but the results did not show a definable mass. The radiologist classified the findings as "BIRADS 2" and recommended a followup

2

mammogram in one year.[1]  Shearer saw Dr. Lonergan through 2007, during which time she allegedly continued to complain of "breast problems."  Dr. Adrienne Martin evaluated Shearer in late 2007, and tissue excised from Shearer's left breast was diagnosed as lobular carcinoma.  Shearer then underwent a bilateral mastectomy.

Shearer alleged in her original petition that Polone negligently failed "to closely follow up the findings after the mammogram in 2005" and "to timely recognize the possibility of malignancy in [Shearer]."  Shearer alleged that Dr. Lonergan was negligent in failing "to closely follow up the findings after the mammogram in 2005," "to perform a fine needle aspiration on the mass in question," "to refer [Shearer] to a surgeon for follow up," and "to timely recognize the possibility of malignancy in [Shearer]."

Shearer attached to her petition the medical expert report of Mark D. Akin, M.D.  She later filed a second expert report prepared by Gerald H. Sokol, M.D.  Both Polone and Dr. Lonergan filed objections to the adequacy of the expert reports and moved to dismiss Shearer's health care liability claims.  The

---

[1] According to Polone, the results of the diagnostic tests indicated that the mass was benign.

3

trial court overruled the objections and denied the motions to dismiss. This interlocutory appeal followed.[2]

### III. STANDARD OF REVIEW

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

---

[2] *See Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (authorizing appeal from trial court order determining that expert report was adequate and denying motion to dismiss).

## IV. CHALLENGES TO EXPERT REPORTS

Civil practice and remedies code section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id*. § 74.351(r)(6). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy. *See id*. § 74.351(a), (b), (*l*). A trial court must grant a motion to dismiss based on the alleged inadequacy of an expert report only if it finds, after a hearing, "that the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id*. § 74.351(*l*).

The information in the report does not have to meet the same requirements as evidence offered in a summary judgment proceeding or at trial, and the report need not marshal all the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in the statute—standard of care, breach, and causation. *See Am. Transitional Care Ctrs. v. Palacios*, 46

5

S.W.3d 873, 878–79 (Tex. 2001); *Thomas v. Alford*, 230 S.W.3d 853, 856 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In detailing these elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort: (1) the report must inform the defendant of the specific conduct the plaintiff has called into question and (2) the report must provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A report does not fulfill these two purposes if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Palacios*, 46 S.W.3d at 879. A claimant is allowed to utilize separate expert reports to satisfy any requirement of section 74.351. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i).

In assessing the report's sufficiency, the trial court may not draw any inferences; it must rely exclusively on the information contained within the report's four corners. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 878. However, section 74.351 does not prevent experts, as opposed to courts, from making inferences based on medical history. *Benish v. Grottie*, No. 02-08-00148-CV, 2009 WL 417264, at *6 (Tex. App.—Fort Worth Feb. 19, 2009, no pet. h.); *see also* Tex. R. Evid. 703 (providing that an expert may draw inferences in a particular case); Tex.

R. Evid. 705 (providing that an expert may testify in terms of opinions and inferences).

## A.    Standard of Care and Breach

In part of her first issue, Polone argues that Dr. Akin's and Dr. Sokol's reports are inadequate because the reports fail to set forth the specific, applicable standard of care for a physician's assistant.  She argues that Dr. Akin's report sets forth one "universal" standard of care for both physicians and physician's assistants but that it fails to state why this is appropriate.  She contends that Dr. Sokol's report also treats the standard of care for a physician's assistant and a physician as one and the same.

An expert report may not assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant specifically breached the standard and how that breach caused or contributed to the cause of injury.  *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.); *see Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.—San Antonio 1999, pet. denied) (stating that the report must specifically refer to the defendant and discuss how that defendant breached the applicable standard of care).  Just as an expert report must provide an explanation of how each defendant specifically breached the standard of care, the expert report must set forth the applicable

7

standard of care for each defendant. *See Doades v. Syed*, 94 S.W.3d 664, 671–72 (Tex. App.—San Antonio 2002, no pet.) (holding expert report inadequate because it failed to set forth the standard of care for each defendant individually and contained mere conclusions regarding breach and causation); *Rittmer v. Garza*, 65 S.W.3d 718, 722–23 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (reasoning that expert report was inadequate because it lacked specificity as to the standards of care applicable to the surgeries performed on plaintiff).

Dr. Akin's report identified the "Specific Acts or Omissions of Medical Care" committed by Polone as (1) failing to adequately evaluate and manage a breast mass and (2) failing to recognize that mammography and breast sonography are not conclusive tests for breast cancer. Under the first act or omission, Dr. Akin stated in relevant part as follows:

> The standard of care for the evaluation of a breast mass is to obtain a thorough history, perform an adequate breast exam, and obtain appropriate diagnostic imaging procedures. When this evaluation yields findings that could be consistent with a breast cancer, either close follow-up or surgical evaluation is mandatory.

Under the second act or omission, Dr. Akin stated as follows:

> The standard of care for interpretation of mammography and breast sonography is to recognize that these tests are not conclusive, and that patient management cannot be based exclusively upon these radiologic findings. PA Pa[l]one relied on the negative mammogram and sonogram findings as evidence that Monica's breast mass was

8

not cancer, even in spite of progressive growth of the breast mass and associated skin changes. In light of the well-published evidence that not all breast cancers can be identified by these radiologic procedures, this falls below the standard of care for the interpretation of mammography and breast sonography.

Regarding Dr. Lonergan, Dr. Akin's report identified the "Specific Acts or Omissions of Medical Care" committed by Dr. Lonergan as the same two "Specific Acts or Omissions of Medical Care" committed by Polone. And as he did with Polone, under the first act or omission, Dr. Akin stated in relevant part as follows:

> The standard of care for the evaluation of a breast mass is to obtain a thorough history, perform an adequate breast exam, and obtain appropriate diagnostic imaging procedures. When this evaluation yields findings that could be consistent with a breast cancer, either close follow-up or surgical evaluation is mandatory.

And under the second act or omission, Dr. Akin stated as follows:

> The standard of care for interpretation of mammography and breast sonography is to recognize that these tests are not conclusive, and that patient management cannot be based exclusively upon these radiologic findings. Dr. Lonergan relied on the negative mammogram and sonogram findings as evidence that Monica's breast mass was not cancer, even in spite of progressive growth of the breast mass and associated skin changes. In light of the well-published evidence that not all breast cancers can be identified by these radiologic procedures, this falls below the standard of care for the interpretation of mammography and breast sonography.

Although Dr. Akin's report sets forth what he opines to be the applicable standards of care for both Polone and Dr. Lonergan regarding evaluation of a

9

breast mass and interpretation of mammography and breast sonography, the standards of care that he identified are identical. Because the report does not delineate between the standard of care applicable to a physician's assistant and the standard of care applicable to a physician, the report sets forth but one standard of care applicable to both Polone and Dr. Lonergan. And because only one standard of care is set forth, the report does not—as Polone points out—explain how or why it is the responsibility of Polone and not Dr. Lonergan, the treating physician, to order diagnostic tests or make a referral; at what point the duty to order additional testing becomes the duty of the physician; or why or whether it is not always the duty of the physician and not the physician's assistant to perform such tasks. In other words, the report does not specifically identify the particular standard of care applicable to Polone. Although the standards of care might be the same for both Polone and Dr. Lonergan, the report does not specifically state as much. Because the report does not articulate that the standards of care are the same, the report required the trial court to impermissibly infer that Polone and Dr. Lonergan shared identical standards of care applicable to evaluation of a breast mass and interpretation of mammography and breast sonography, which may or may not be correct, considering the information contained only within the four corners of the report.

10

*See Wright*, 79 S.W.3d at 52 (stating that trial court may not draw inferences regarding information contained in expert report).

Dr. Sokol's report sets forth in a single paragraph what he opines to be the standard of care for the diagnosis and treatment of women with suspected breast cancer, stating as follows:

### STANDARD OF CARE

> As a result of my background, training, and clinical experience in the treatment of women with suspected breast cancer, I am familiar with the standards of care for the diagnosis and treatment of such patients. The standard of care for a patient with a palpable mass and skin dimpling is to perform a fine needle aspiration of the lump and to refer to a breast surgeon.

Dr. Sokol's report sets forth a single standard of care for both Polone and Dr. Lonergan instead of identifying the specific standard of care applicable to each. *See Palacios*, 46 S.W.3d at 880 ("Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently."); *see also Doades*, 94 S.W.3d at 671–72. Dr. Sokol's report is deficient even when considered with Dr. Akin's report.

We hold that the trial court abused its discretion by denying Polone's motion to dismiss on the ground that Dr. Akin's and Dr. Sokol's expert reports were deficient for failing to adequately set forth the applicable standards of

11

care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b), (*l*), (r)(6). We sustain this part of Polone's first issue.

In another part of her first issue, Polone contends that Dr. Akin's report is inadequate regarding the element of breach. She specifically argues that Dr. Akin's report does not explain *why* it is a breach of the standard of care for a physician's assistant to disregard the diagnostic tests performed (because, according to Polone, the results indicated that the mass was benign). Under the failure to adequately evaluate and manage a breast mass "Specific Act[] or Omission[] of Medical Care," Dr. Akin elaborated on the mandatory "close follow-up or surgical evaluation" standard of care and stated, "*Even though* a diagnostic mammogram and sonogram were performed and reported as BIRADS 2, *appropriate management* of a palpable breast mass with skin dimpling would have included either fine needle aspiration of the mass or referral to a breast surgeon." [Emphasis added.] Thus, Dr. Akin explains exactly why it is a breach of the standard of care for a physician's assistant to disregard diagnostic tests resulting in BIRADS 2: because "appropriate management" of a palpable breast mass with skin dimpling calls for fine needle aspiration or referral to a breast surgeon. We overrule this part of Polone's first issue.

**B.     Causation**

In another part of her first issue, Polone argues that Dr. Akin's and Dr. Sokol's reports are deficient with regard to causation.  She contends that the reports fail to set forth how her alleged breaches of the standard of care resulted in a delay of the diagnosis and treatment of Shearer's breast cancer, how the alleged delay caused more damages and injury than would have occurred absent the alleged breaches of the standard of care, and how but for the alleged breaches of the standard of care, Shearer would not have been injured.  Dr. Lonergan argues in his first issue that the reports are speculative and conclusory.

In fulfilling the dual purposes of the expert report, the expert must explain the basis of his statements and link his conclusions to the facts.  *Wright*, 79 S.W.3d at 52.  The report must not be conclusory in its explanation of causation.  *Id*. at 53; *Palacios*, 46 S.W.3d at 879.

Dr. Akin's report states in part as follows:

It is my professional opinion that Monica Shearer's breast cancer was present for at least 22 months prior to biopsy confirmation, and the delay in diagnosis was a direct consequence of the following individuals failing to meet the standards of medical care:

. . . .

It is my professional medical opinion that the diagnosis of Monica's breast cancer was delayed for 22 months.  During this time frame

13

there is documented evidence of progressive growth and development of her breast cancer. *Within reasonable medical probability, Monica's breast cancer would have been timely diagnosed if PA Polone and Dr. Lonergan had met the standards of care for the evaluation and management of a breast mass. This failure to meet the standard of care has increased Monica's risk of metastatic breast cancer and subsequent morbidity and mortality, and constitutes medical negligence.* [Emphasis added.]

Dr. Sokol's report states in relevant part:

It is my opinion that, more probably than not, the delay in diagnosis of the breast cancer resulted in injury or damage to this patient. It is my opinion, to a degree of medical probability, that Ms. Shearer's breast cancer could have been treated, if timely diagnosed, without the necessity of mastectomies and as likely her prognosis was worsen[ed] by delay of diagnosis as well.

The record demonstrates that Shearer is suing Polone and Dr. Lonergan for damages resulting from their alleged negligence in failing to timely diagnose Shearer's breast cancer. Dr. Akin addresses causation in his report when he opines that there has been an increase in Shearer's (1) risk of metastatic breast cancer and (2) subsequent morbidity and mortality as a result of Polone and Dr. Lonergan's alleged failure to meet the applicable standards of care. Stated otherwise, but for Polone and Dr. Lonergan's failure to meet the accepted standards of care regarding evaluation and management of a breast mass and interpretation of mammography and breast sonography, Shearer would not have experienced an increase in the risk of metastatic breast cancer and morbidity and mortality. According to the plain language of the report, Dr. Akin does not

14

opine that Shearer would *not* have a risk of metastatic cancer, morbidity, and mortality in the absence of Polone's and Dr. Lonergan's breaches of the standard of care; he only opines that their failure to meet the standards of care *increased* those risks. This is not a conclusory opinion. *Cf. Wright*, 79 S.W.3d at 53 (reasoning that expert report was conclusory when it stated that the plaintiff might have had "the possibility of a better outcome" without explaining how defendant's conduct caused injury to plaintiff).

Dr. Sokol similarly contends that if timely diagnosed, Shearer's breast cancer could have been treated without the necessity of mastectomies. In other words, but for Polone and Dr. Lonergan's failure to meet the accepted standards of care for a patient with a palpable mass and skin dimpling, Shearer would not have had to undergo treatment for her condition through implementation of mastectomies.

Dr. Akin's report and Dr. Sokol's report thus show a causal connection between the complained-of negligent acts or omissions and the resulting injury: but for Polone and Dr. Lonergan's negligent acts or omissions involving the failure to timely diagnose Shearer's breast cancer, Shearer would not have incurred the alleged injuries of an increased risk of metastatic breast cancer, morbidity, and mortality and treatment of her cancer by way of mastectomies. The reports accordingly inform Polone and Dr. Lonergan of the specific conduct

15

that Shearer has called into question and provide a basis for the trial court to conclude that the claims have merit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 879. This is all that is required; the information in the report does not have to meet the same requirements as evidence offered in a summary judgment proceeding or at trial. *See Palacios*, 46 S.W.3d at 878–79. Consequently, in the context of examining causation, the reports are sufficient to represent an objective good-faith effort to comply with the definition of an expert report in civil practice and remedies code section 74.351(r)(6). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6).[3] We hold that the trial court did not abuse its discretion by denying Polone's and Dr. Lonergan's motions to dismiss on this ground. We overrule this part of Polone's first issue and Dr. Lonergan's first issue.

## C. Qualifications

In her second issue, Polone argues that Dr. Akin's and Dr. Sokol's reports "fail to show that they are qualified to testify regarding the standard of care applicable to a physician's assistant."

An expert providing opinion testimony regarding whether a health care provider departed from the accepted standards of health care must satisfy the

---

[3] Dr. Lonergan additionally makes some type of comparative responsibility argument. It is unpersuasive. *See* Tex. R. App. P. 38.1(h).

16

requirements set forth in section 74.402. *Id*. § 74.351(r)(5)(B). Section

74.402 provides in part as follows:

> (b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:
>
> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id*. § 74.402(b) (Vernon 2005). In determining whether a witness is qualified

on the basis of training or experience, the court shall consider whether, at the

time the claim arose or at the time the testimony is given, the witness (1) is

certified by a licensing agency of one or more states of the United States or a

national professional certifying agency, or has other substantial training or

experience, in the area of health care relevant to the claim; and (2) is actively

practicing health care in rendering health care services relevant to the claim.

*Id*. § 74.402(c)(1)–(2). Our analysis of the qualifications of an expert under

17

section 74.351 is limited to the four corners of the expert's report and curriculum vitae. *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Dr. Akin's report and curriculum vitae demonstrate that he has been a licensed physician in the State of Texas since 1979, that he is board certified by the American College of Obstetricians and Gynecologists, and that he has been in private practice since 1983. Dr. Akin was trained in breast evaluation during a four-year residency at Parkland Hospital in Dallas, Texas, and he has twenty-four years of "office practice experience" in Austin, Texas, where he has "performed breast examinations on a regular daily basis." He states the following:

> I am qualified to render an opinion on the physician and nurse practitioner care provided in this case because I am an expert in the diagnosis of breast disease. I have examined *thousands* of women with fibrocystic breast disease and *hundred[s]* of women with breast cancer. This includes the routine practice of obtaining a history of the patient's breast complaints and performing a thorough physical examination, and when necessary ordering mammography, sonography, and/or fine needle aspiration. Moreover, as a primary care physician, I am responsible for assessing all of the above information and determining which patients should be referred for further surgical evaluation and treatment. My 24 years of clinical experience make me intimately familiar with the accepted standards of care as applies to all aspects of this case. [Emphasis added.]

18

Dr. Sokol's report and curriculum vitae demonstrate that he is licensed in Florida and Washington, D.C., and that he is board certified by the American Boards of Internal Medicine, Radiology, Internal Medicine Sub-specialty Oncology, Clinical Pharmacology, and Quality Assurance. He states the following:

> I am qualified to attest to standards of medical treatment for the diagnosis and treatment of a patient presenting as Ms. Shearer did. I am qualified to do so by virtue of the fact that I am a licensed physician practicing in the State of Florida, specializing in Oncologic Medicine. *In my clinical practice, I have examined and treated hundreds of patients with the presenting signs and symptoms similar to those that Ms. Shearer presented with at the office of Dr. Lonergan* in the approximate two year period prior to her breast surgery. *I have also supervised the oncological treatment of women with carcinoma such as that diagnosed in this patient*, and as a result of my training and experience in such treatment, I am familiar with the effects of early diagnosis and treatment of patients with these problems, and the effects of late diagnosis and treatment of such patients. *I have treated many patients with lesions such as Ms. Shearer which were diagnosed in a timely manner, and I have been involved in the care of many such patients who did not receive the benefit of timely diagnosis and treatment*. [Emphasis added.]

Polone does not specifically challenge any section 74.402(b) requirement. *Cf. Burrell*, 230 S.W.3d at 759–62 (addressing each of appellant's specific section 74.402 challenges). She contends that Dr. Akin's report and Dr. Sokol's report fail to state whether they are qualified to testify regarding the standard of care for a physician's assistant. This determination, however, is

19

made by considering the information contained within Dr. Akin's and Dr. Sokol's reports and curricula vitae in light of the qualification requisites in civil practice and remedies code section 74.402(b) and (c). *See id*. at 758. Polone also argues that neither Dr. Akin nor Dr. Sokol is qualified because their reports do not state whether the standards of care described in the reports apply to a physician, a physician's assistant, or both. This is not an issue relevant to whether Dr. Akin and Dr. Sokol are *qualified* to offer an expert opinion in this case; it is an issue appropriately addressed when considering the adequacy of the reports regarding standards of care, which we have already addressed above.

We hold that the trial court did not abuse its discretion by denying Polone's motion to dismiss the expert reports of Dr. Akin and Dr. Sokol on the grounds that they are not qualified to offer an expert opinion in this case. We overrule Polone's second issue.

### D. Specificity

In his second issue, Dr. Lonergan argues that neither Dr. Akin's report nor Dr. Sokol's report represents a good-faith effort to comply with the definition of an expert report because the claims alleged in Shearer's petition (failing to closely follow up the findings after the mammogram in 2005, failing to perform a fine needle aspiration on the mass in question, failing to refer Shearer to a

20

surgeon for followup, and failing to timely recognize the possibility of malignancy in Shearer) do not match the claims addressed in the reports. We have thoroughly reviewed Shearer's original petition and the reports of Dr. Akin and Dr. Sokol. In the context of whether the theories of negligence match the claims addressed in the reports, with the exception of the standard of care issue addressed in part of Polone's first issue, the reports of Dr. Akin and Dr. Sokol considered together represent an objective good-faith effort to comply with the definition of an expert report in section 74.351(r)(6). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i), (*l*). We overrule Dr. Lonergan's second issue.

## V. REMAND OR DISMISS?

Polone contends that Shearer is not entitled to a remand of the case if this court determines that the expert reports are deficient. We disagree. Civil practice and remedies code section 74.351(c) allows the trial court to grant one thirty-day extension to the claimant in order to give the claimant an opportunity to cure a report found to be deficient. *Id*. § 74.351(c). Here, it is this court, not the trial court, that has sustained part of Polone's motion to dismiss challenging the adequacy of Dr. Akin's and Dr. Sokol's reports. Section 74.351(c) is not rendered meaningless simply because this court, instead of the trial court, determines that an expert report is deficient. *See Leland v. Brandal*,

21

257 S.W.3d 204, 205, 207–08 (Tex. 2008) ("In this health care liability claim, we must decide whether a plaintiff may be afforded a thirty-day extension to cure an expert report after a trial court's ruling that the report is adequate is reversed on appeal. We hold that when elements of a timely filed expert report are found deficient, either by the trial court or on appeal, one thirty-day extension to cure the report may be granted.") (citation omitted); *see also Miranda v. Martinez*, No. 13-06-00386-CV, 2007 WL 687001, at *3–4 (Tex. App.—Corpus Christi Mar. 8, 2007, pet. denied) (mem. op.). The record does not demonstrate that the trial court has already granted Shearer a section 74.351(c) extension. Accordingly, remand is appropriate for the trial court to make its civil practice and remedies code section 74.351(b)—which is subject to section 74.351(c)—determination. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), (c).

## VI. CONCLUSION

We affirm the trial court's order denying Dr. Lonergan's motion to dismiss. Having sustained part of Polone's first issue, we reverse the trial court's order denying Polone's motion to dismiss and remand the case to the trial court to determine whether to dismiss Shearer's claim against Polone or to

22

grant Shearer a section 74.351(c) thirty-day extension to cure the deficiency.

*See id*.

WILLIAM BRIGHAM
JUSTICE

PANEL:   LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  April 2, 2009