COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-07-360-CV

 

 

MIKE BISMAR, M.D.                                                             APPELLANT

 

                                                   V.

 

DOROTHY A. MOREHEAD,                                                     APPELLEES

VAUGHN R. MOREHEAD, AND 

JAMES P. MOREHEAD, III, 

INDIVIDUALLY AND AS HEIRS 

AT LAW OF GLORIA MOREHEAD,                                                          

DECEASED

                                              ------------

 

           FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                     MEMORANDUM OPINION[1] ON REMAND

 

                                              ------------








In this
interlocutory appeal, appellant Mike Bismar, M.D., complains of the trial court=s denial
of his motion to dismiss with prejudice the health care liability claims of
appellees Dorothy A. Morehead, Vaughn R. Morehead, and James P. Morehead, III,
individually and as heirs at law of Gloria Morehead, Deceased.  We originally dismissed the appeal for want
of jurisdiction based on our decision in Jain v. Stafford[2]
in which we held that an order denying a motion to dismiss based on the alleged
inadequacy of an expert report is not appealable by interlocutory appeal.[3]  In Lewis v. Funderburk,[4]
however, the Texas Supreme Court held that appellate courts have jurisdiction
to review such orders by interlocutory appeal.[5]  Following Funderburk, the Texas
Supreme Court reversed our order dismissing this appeal and instructed us that
we do have jurisdiction.[6]  We now consider the appeal of this case on
the merits.  We affirm.








I.     FACTUAL AND PROCEDURAL BACKGROUND

On or
about September 9, 2004, Gloria Morehead was admitted to Kindred Hospital
Tarrant CountyBFort Worth Southwest (the
Hospital) to recover from surgery.  After
her admission to the Hospital, Gloria fell and injured her arm.  The injury left her arm severely bruised and
swollen from internal bleeding, which ultimately led to her death from
hypovolemic shock.  Appellant Dr. Mike
Bismar was one of three physicians who treated Gloria after her fall. 

On
September 8, 2006, the Moreheads filed health care liability claims against the
Hospital, Dr. Bismar, and two other treating physicians, seeking survival and
wrongful death damages individually and as heirs of Gloria=s
estate.  The suit was predicated upon the
alleged negligent failure of Dr. Bismar and the other defendants to timely and
properly diagnose and treat Gloria for the bleeding in her left arm. 








In
January 2007, the Moreheads served Dr. Bismar with the report of Dr. Charles E.
Oswalt.  Dr. Bismar objected to the
report and moved to dismiss on the grounds that the report was conclusory as to
his negligence and causation of Gloria=s death,
failed to specifically describe how his treatment breached the standard of
care, and improperly attributed a collective standard of care and breach to all
of Gloria=s treating physicians without
addressing Dr. Bismar individually.  On
May 10, 2007, the trial court granted a thirty-day extension to allow the
Moreheads to supplement the report pursuant to section 74.351(c).[7]  In May 2007, the Moreheads served Dr. Oswalt=s
supplemental report. 

Dr.
Bismar objected to the supplemental report and moved to dismiss on the grounds
that Dr. Oswalt again addressed Dr. Bismar and the other defendants
collectively and failed to provide specific information regarding the standard
of care, breach, and causation attributable to Dr. Bismar.  The trial court overruled Dr. Bismar=s
objections and denied his motion to dismiss. 
Dr. Bismar then brought this appeal.

II.    
SUFFICIENCY OF DR. OSWALT=S EXPERT
REPORT

In his
sole issue on appeal, Dr. Bismar contends that Dr. Oswalt=s
narrative report of the applicable standards of care, breach, and causation is
legally insufficient under section 74.351 of the Texas Civil Practice and
Remedies Code.








A.     Standard of Review

We
review a trial court=s determination of a motion to
dismiss under section 74.351 for an abuse of discretion.[8]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[9]  An appellate court cannot conclude that a
trial court abused its discretion merely because the appellate court would have
ruled differently in the same circumstances.[10]  However, a trial court has no discretion in
determining what the law is or in applying the law to the facts, and Aa clear
failure by the trial court to analyze or apply the law correctly will
constitute an abuse of discretion.@[11]








B.     Texas Civil Practice and
Remedies Code Section 74.351

Section
74.351 provides that, within 120 days of filing suit, a plaintiff must serve
expert reports for each physician or health care provider against whom a
liability claim is asserted.[12]  An expert report is a written report by an
expert that provides a fair summary of the expert=s
opinions regarding the applicable standard of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standard, and the causal relationship between that failure and the injury,
harm, or damages claimed.[13]  If a claimant timely furnishes an expert
report, a defendant may file a motion challenging the report=s
adequacy.[14]  A trial court may grant a motion to dismiss
based on the alleged inadequacy of an expert report only if it finds, after a
hearing, Athat the report does not
represent an objective good faith effort to comply with the definition of an
expert report@ in the statute.[15]








To
constitute an objective good faith effort to comply with the expert report
requirements, the report must include the expert=s
opinions on each of the elements identified in the statuteCstandard
of care, breach, and causation.[16]  In detailing these elements, the Texas
Supreme Court has made clear that an expert report must provide enough
information to fulfill two purposes:  (1)
inform the defendant of the specific conduct the plaintiff has called into
question and (2) provide a basis for the trial court to conclude that the plaintiff=s claims
have merit.[17]  To fulfill these purposes, the information in
the report need not meet the same requirements as evidence offered in a summary
judgment proceeding or at trial.[18]  Nor is it necessary that the report need
marshal all the plaintiff=s proof.[19]  A report, however, that merely states the
expert=s
conclusions, or omits any of the statutory requirements is insufficient.[20]  In assessing the report=s
sufficiency, the trial court may not draw any inferences from outside the
report.[21]  Rather, the court must rely exclusively on
the information contained within the report=s four
corners.[22]








C.     Standard of Care, Breach,
and Causation

Dr.
Bismar contends that Dr. Oswalt=s report
is conclusory and speculative in its assertion of the standard of care, breach,
and causation because it 1) asserts collective standards as to Gloria=s death
without differentiating between Dr. Bismar and the other treating physicians;
2) incorrectly states that Dr. Bismar Atook no
measures to treat Gloria [] for hypovolemic shock until she was >found to
be unresponsive= in the afternoon of September
22, 2004,@ when, in fact, Dr. Bismar
ordered a transfusion after examining her arm; and 3) contains no reference to
the timing of Dr. Bismar=s treatment of Gloria.








Statements
concerning the standard of care and breach must identify what care was
expected, and the care that was not given, with such specificity that
inferences need not be indulged to discern them.[23]  The same standard of care may apply to more
than one defendant only if they owe the same duty to the patient.[24]  In addition, an expert report must not be
conclusory in its explanation of causation; it must explain the basis of its
statements sufficiently to link its conclusions to the facts.[25]  The report may only assert that multiple
defendants are all negligent if it provides an explanation of how each
defendant specifically breached the standard and how each defendant=s breach
caused or contributed to the cause of injury.[26]


In his
report, Dr. Oswalt states that Gloria died from hypovolemic shock on September
22, 2004, due to uncontrolled bleeding after her fall which Dr. Bismar failed
to timely treat.  His report then
describes the standard of care for treating Gloria, how Dr. Bismar=s
treatment of Gloria fell below this standard of care, and how his breach
allegedly caused her death:








Mrs. Morehead was
pronounced dead at 6:15 p.m. on September 22, 2004.  She died in the hospital from uncontrolled
bleeding which resulted in hypovolemic shock that was left untreated.

 

As I stated in my January
report regarding Drs. Hisham Bismar, McLaughlin and Mike Bismar, all three
physicians were involved in the care and treatment of Mrs. Morehead after she
injured her arm on September 21, 2004. 
The standard of care set forth in my initial report applies equally to
all three physicians, including Dr. Hisham Bismar and Dr. Mike Bismar.  Although most of the records are not specific
in identifying ADr. Bismar,@ Dr. Mike Bismar has
signed several progress notes, including one after his examination of Mrs.
Morehead=s bleeding arm.  Dr.
Hisham Bismar is identified several times as the recipient of the progress
reports regarding Mrs. Morehead.

 

After Mrs. Morehead=s fall on September 21,
2004, it was apparent from the appearance of her swollen and bleeding arm, from
her Ared, red bloody urine,@ from her low hemoglobin
and low hematocrit (approaching critical levels), from the very large hematoma
that continued to increase in size, from the patient=s description of [sic] Aweak and confused,@ from her blood pressure
that continued to drop, and from her severe pain (a A10" on a 1-10
scale), all which are symptomatic of internal bleeding, that Mrs. Morehead was
hypovolemic.  Lovenox, a drug which would
exacerbate the patient=s condition, was not
discontinued until the following day. 
But most importantly, as stated in my initial report, it is the standard
of care for physicians caring for a hospitalized patient who is hemorrhaging to
control the bleeding as soon as it is detected.  In this case the
physicians were aware that Mrs. Morehead was hemorrhaging on September 21,
2004.  Abnormal quatting due to the
Lovenox should have been corrected at the first sign of bleeding. This
correction was not ordered. 

 








As stated in my initial
report, the standard of care is to control the patient=s bleeding and to treat
the hypovolemic shock vigorously with crystalloid and blood transfusions.  In cases such as Mrs. Morehead=s, shock related to
injury and/or hemorrhage is a state of circulatory failure or collapse in which
there is insufficient return of blood to the heart, a sharp decrease in the
blood pressure of the arteries, and a continuing loss of blood flow to the body
tissues and organs.  Shock and the
associated degree of circulatory collapse may be so profound as to cause death
in a situation where the precipitating injury would not, in itself, normally be
fatal.  Consequently, the standard of
care, as set forth in my initial report, is to control the bleeding and to
replace the blood lost by hemorrhage with blood transfusions.  In most cases, following the standard of care
will relieve shock and permit recovery. 
However, time is of the essence in initiating treatment once the
tell-tale signs are recognized.  It
should go without saying that it is the standard of care for a physician who is
treating patients in a hospital setting to be alert for symptoms of
hemorrhaging and to take immediate action to control the bleeding while
treating vigorously with crystalloid and blood until the hypotension is
corrected.  Drs. Bismars= failure to do so was a
breach of the standard of care which resulted in the death of Gloria Morehead.

 

Mrs. Morehead had
exhibited classic symptoms of hypovolemic shock as early as September 21,
2004.  The contusion on her left arm
caused by the hemorrhage was severe, as shown in the hospital photographs.  Nevertheless, neither Dr. Hisham Bismar nor
Dr. Mike Bismar took no [sic] measures to treat Gloria Morehead for hypovolemic
shock until she was Afound to be unresponsive@ in the afternoon of
September 22, 2004.  Mrs. Morehead, who
was declared dead at 6:15 p.m. on September 22, 2004, never received a blood
transfusion.  She died as a result of
hypovolemic shock due to her treating doctors= failure to meet the
standard of care.

 








Dr.
Oswalt=s report
states that Dr. Bismar should have taken Aimmediate
action@ to
control Gloria=s bleeding by treating her
hypovolemic shock Avigorously with crystalloid and
blood transfusions,@ but that he failed to do
so.  According to Dr. Oswalt, this
standard applies equally to all three treating physicians, Aincluding . . . Dr.
Mike Bismar.@[27]  Thus, Dr. Oswalt=s report
states a standard of care for treating internal bleeding and hypovolemic shockCtaking Aimmediate
action to control the bleeding while treating vigorously with crystalloid and
blood until the hypotension is corrected@Cthat
specifically applies to Dr. Bismar.  The
report also provides a specific explanation as to how Dr. Bismar breached the
standardCfailure
to take Aimmediate
action@ to
treat Gloria=s hypovolemic shock in
accordance with the standard of care set forth in the report.

In
addition, the report provides specific information as to causation.  The report first states that uncontrolled
internal bleeding that results in hypovolemic shock, if not treated
immediately, may cause profound circulatory collapse that leads to death.  It then specifically states that the failure
of Dr. Bismar to take Aimmediate action@ to
control Gloria=s bleeding or replace her lost
blood when he examined her arm on September 22, 2004, caused the hypovolemic
shock which led to her death the same day.[28]









Based on the information contained in the four corners of Dr. Oswalt=s
report, and after giving full consideration to Dr. Bismar=s
challenges to the report, we conclude that the report discusses the standard of
care, breach, and causation with sufficient specificity to inform Dr. Bismar of
the conduct the Moreheads have called into question and to provide a basis for
the trial court to conclude that the claims have merit.[29]  Consequently, we hold that the report
represents an objective good faith effort to comply with civil practice and
remedies code section 74.351(r)(6)=s
definition of an expert report.[30]  Therefore, the trial court did not abuse its
discretion by denying Dr. Bismar=s motion
to dismiss.  We overrule Dr. Bismar=s sole
issue on appeal.

III.     CONCLUSION

We affirm the trial court=s
October 2, 2007, order denying Dr. Mike Bismar=s motion
to dismiss.

 

PER
CURIAM

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  December 10, 2009











[1]See Tex. R. App. P. 47.4.





[2]214 S.W.3d 94, 97 (Tex.
App.CFort Worth 2006, pet.
dism=d).





[3]See Bismar v. Morehead, No. 02-07-00360-CV,
2007 WL 4233521, at *1 (Tex. App.CFort Worth Nov. 29, 2007) (mem. op.), rev=d, 262 S.W.3d 805 (Tex.
2008).





[4]253 S.W.3d 204 (Tex.
2008).





[5]Id. at 205B07 (citing Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(b) (Vernon Supp. 2009) (allowing for
dismissal with prejudice and reasonable attorney=s fees and costs awarded
to defendant if Aexpert report has not
been served@ by claimant within
period specified by statute)).





[6]Bismar v. Morehead, 262 S.W.3d 805, 806
(Tex. 2008).





[7]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(c) (Vernon
Supp. 2009) (AIf an expert report has
not been served within the period specified by Subsection (a) because elements
of the report are found deficient, the court may grant one 30‑day
extension . . . .@).





[8]Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex.
2006) (applying abuse of discretion standard to former Texas Revised Civil
Statute article 4590i, ' 13.01 (current
version at Tex. Civ. Prac. & Rem. Code Ann. ' 74.351)); Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877B78 (Tex. 2001) (same); Ctr.
for Neurological Disorders, P.A. v. George, 261 S.W.3d 285, 290B91 (Tex. App.CFort Worth 2008, pet.
denied) (applying abuse of discretion standard to Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351).





[9]Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004).





[10]E.I. du Pont de Nemours
& Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).





[11]Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992); Ehrlich v. Miles, 144 S.W.3d 620, 624 (Tex. App.CFort Worth 2004, pet.
denied).





[12]Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a) (Vernon
Supp. 2009).





[13]Id. ' 74.351(r)(6) (Vernon
Supp. 2009).





[14]See id. ' 74.351(a), (c), (l)
(Vernon Supp. 2009).





[15]Id. ' 74.351(l).





[16]Palacios, 46 S.W.3d at 878B79; Thomas v. Alford,
230 S.W.3d 853, 856 (Tex. App.CHouston [14th Dist.] 2007, no pet.).





[17]Palacios, 46 S.W.3d at 879; Gray
v. CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.CHouston [1st Dist.] 2006,
no pet.).





[18]Palacios, 46 S.W.3d at 878B79; Thomas, 230
S.W.3d at 856.





[19]Palacios, 46 S.W.3d at 878B79; Thomas, 230
S.W.3d at 856.





[20]Palacios, 46 S.W.3d at 879.





[21]Bowie Mem'l Hosp. v.
Wright,
79 S.W.3d 48, 52 (Tex. 2002); Palacios, 46 S.W.3d at 878.





[22]Bowie Mem'l Hosp., 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878.





[23]Benish v. Grottie, 281 S.W.3d 184, 198
(Tex. App.CFort Worth 2009, pet.
denied); Thomas, 230 S.W.3d at 858.





[24]Compare Barber v. Dean, C S.W.3d. C, No. 02‑07‑353‑CV,
2009 WL 3490952, at *10 (Tex. App.CFort Worth Oct. 29, 2009, no pet. h.) (AThe report is not
insufficient for >grouping= [a]ppellees together
because Dr. Wagner specifically states that they all owed the same duty to
ensure the proper positioning and padding of Malcolm's arm.@), and In re
Stacy K. Boone, P.A., 223 S.W.3d 398, 405B06 (Tex. App.CAmarillo 2006, no pet.)
(holding that single standard of care applicable to physicians and physician
assistant was sufficient because all participated in administering treatment), with
Polone v. Shearer, 287 S.W.3d 229, 235 (Tex. App.CFort Worth 2009, no pet.)
(holding report that set forth single standard of care applicable to physician
and physician assistant insufficient to represent a good faith effort because A[a]lthough the standards
of care might be the same for both [the physician and physician assistant], the
report does not specifically state as much@).





[25]Polone, 287 S.W.3d at 236; see
also Bowie Mem'l Hosp., 79 S.W.3d at 52B53; Hutchinson v. Montemayor, 144 S.W.3d
614, 617 (Tex.  App.CSan Antonio 2004, no
pet.).





[26]Polone, 287 S.W.3d at 233B34; Taylor v. Christus
Spohn Health Sys. Corp., 169 S.W.3d 241, 244 (Tex. App.CCorpus Christi 2004, no
pet.); see Wood v. Tice, 988 S.W.2d 829, 831 (Tex. App.CSan Antonio 1999, pet.
denied) (stating that report must specifically refer to defendant and discuss
how that defendant breached applicable standard of care).





[27]See In re Stacy K. Boone, 223 S.W.3d at 405B06; Barber, 2009
WL 3490952, at *10.





[28]See Polone, 287
S.W.3d at 233B34; Taylor, 169
S.W.3d at 244.





[29]See Palacios, 46 S.W.3d at 875, 878.





[30]See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(l),
(r)(6).