**Opinion filed April 22, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00204-CV

_____

## GARY W. ELAM, M.D. AND GARY W. ELAM, M.D., P.A., Appellants

## V.

## ERIK GALINDO, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-126,521**

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from an order denying a motion to dismiss a health care liability claim pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2009). We affirm.

Gary W. Elam, M.D. and Gary W. Elam, M.D., P.A. (Dr. Elam) assert in two issues that the plaintiff's expert report is insufficient to satisfy the requirements of Section 74.351 with respect to causation. In the first issue, Dr. Elam contends that the expert report was inadequate with respect to the causal relationship between the alleged negligence and Erik Galindo's alleged

injury of morbidity of treatment.  In the second issue, Dr. Elam attacks the report's adequacy with respect to the causal relationship between the alleged negligence and Galindo's alleged injury of risk of death.

We review a trial court's determination regarding dismissal of a claim pursuant to Section 74.351 under an abuse-of-discretion standard.  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  A trial court abuses its discretion by acting in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  *Id.*  The issue before a trial court considering a motion to dismiss brought pursuant to Section 74.351 is whether the report represents a good faith effort to comply with the statute. Section 74.351(*l*); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).  To constitute a good faith effort, the report need not marshal all of the plaintiff's proof, but it must (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to conclude that the claims have merit.  *Palacios*, 46 S.W.3d at 878-79.  The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  Section 74.351(r)(6).  The expert must explain the basis of his statements to link his conclusions to the facts.  *Bowie*, 79 S.W.3d at 52.

Galindo alleges that Dr. Elam performed surgery on Galindo to remove a mass in his jaw area in 2002 but that Dr. Elam negligently failed to inform Galindo of the pathology results: lymphocyte predominant Hodgkin disease (cancer).  Galindo asserts that he did not learn that he had cancer until 2008 after another mass developed in the same area.  He also asserts that Dr. Elam fabricated an entry in Galindo's medical records to show that the pathology results were discussed with Galindo and his family in 2002 and that Galindo was referred to a cancer center at that time.

In an attempt to comply with Section 74.351, Galindo obtained an expert report from Dr. Tyler Curiel.  In his report, Dr. Curiel states that Dr. Elam breached the standard of care by failing to notify and discuss the pathology findings with Galindo.  With respect to causation, Dr. Curiel's report provides:

> **2. The treatment for Hodgkin disease in 2002 was inadequate.**  The patient underwent simple excision of the lymphomatous mass in 2002.  Treatment for

stage IA Hodgkin disease should also have included radiation therapy at a minimum, which was not offered or performed.

**3. The treatment and diagnosis delay between November 2002 and August 2008 significantly increased morbidity of treatment.** In November 2002, the Hodgkin disease was clinically stage IA . . . . In August 2008 the stage was IIIB. Stage IA Hodgkin disease in this setting can be managed with local radiation therapy alone. Stage IIIB disease requires high-dose chemotherapy as proposed and undertaken. Treatment for stage IA Hodgkin disease in 2002 could have been accomplished without the attendant risk of high-dose chemotherapy, which is required in stage IIIB. Risks of this chemotherapy include . . . .

**4. The treatment and diagnosis delay between November 2002 and August 2008 significantly increased risk of death.** Stage IA Hodgkin disease is a highly curable disease with 8-year survival around 99%. Stage IIIB Hodgkin disease is still treatable [but has a] 5-year survival around 85%. Treatment failure and relapse rates are higher in stage IIIB compared to stage IA Hodgkin disease. Thus, to a reasonable degree of medical probability, survival was compromised by the treatment delay. Further, there were no atypical features of the Hodgkin disease in 2002. Current atypical features suggest (but do not yet diagnose) transformation. Transformation in Hodgkin disease is a grave complication, often resulting in incurable disease.

Dr. Elam argues that the report fails to establish the needed causal link between the alleged negligence and any compensable injury suffered by Galindo. Dr. Elam asserts that, to be sufficient, the report had to establish that Dr. Elam's negligence caused the 2008 tumor, that Galindo has or probably will develop morbidity related to the chemotherapy treatment of the 2008 tumor, and that Galindo will likely not survive the recurrence of cancer. We disagree. Although Dr. Elam asserts that "the 2008 tumor is the root cause behind this alleged injury," Dr. Curiel suggests that Hodgkin disease, which was diagnosed but not treated in 2002, is the root of Galindo's injuries.

Dr. Curiel's report indicates that, during the delay, the disease advanced from stage IA, which is "highly curable," to stage IIIB with atypical features suggesting transformation, which is "often . . . incurable." The report also indicates that the delay in treating Galindo's Hodgkin disease caused an increase in the morbidity of treatment from radiation alone to high-dose chemotherapy. The trial court could have reasonably determined that Dr. Curiel's report represented a good faith effort as to the causal relationship between Dr. Elam's failure to meet the standard of care and Galindo's damages. For a review of cases in which expert reports were found to adequately link causation of injuries to delays in health care services, see *Polone v.*

*Shearer*, 287 S.W.3d 229, 236-37 (Tex. App.—Fort Worth 2009, no pet.); *Mosely v. Mundine*, 249 S.W.3d 775, 780-81 (Tex. App.—Dallas 2008, no pet.); *Harris County Hospital District v. Garrett*, 232 S.W.3d 170, 181 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Hillcrest Baptist Medical Center v. Wade*, 172 S.W.3d 55 (Tex. App.—Waco 2005, pet. dism'd); and *In re Barker*, 110 S.W.3d 486 (Tex. App.—Amarillo 2003, orig. proceeding).

We cannot hold that the trial court abused its discretion by denying Dr. Elam's motion to dismiss. Dr. Elam's issues are overruled.

The order of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 22, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4