

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00218-CV

LAURA HATCHEL, AS NEXT
FRIEND OF C.H.
                                                APPELLANT

V.

MICHELLE HACKER, FNP-C                          APPELLEE

----------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Laura Hatchel, as next friend of C.H., appeals the trial court's order dismissing her health care liability claim against Appellee Michelle Hacker, FNP-C. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(10) (West Supp. 2013). We will reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

According to Hatchel's original petition, on March 16, 2010, C.H. cut open the bottom of his left foot when he jumped into Lake Texoma and landed on an object. He presented at Minor Emergency of Denton with a 3 centimeter primary laceration, a .5 centimeter secondary laceration, and swelling and ecchymosis across the width of his foot. John Mulford, FNP, cleaned and removed dirt and wood from the "heavily contaminated" wound, sutured the lacerations, and applied antibiotic ointment. C.H. received a tetanus shot and several prescriptions and went home.

C.H.'s condition worsened over the next few days, so on March 18, 2010, he went to the McLeroy, Gibbs & Klein Medical Clinic, where he was treated by Hacker and diagnosed with an infected laceration. Hacker examined the wound without opening it, took a culture, prescribed an additional antibiotic, and instructed C.H. to wash the wound, change the dressing, and apply ointment to it two to three times per day.

Two days later, on March 20, 2010, C.H. returned to the McLeroy, Gibbs & Klein Medical Clinic with a persistent high fever and a swollen, red foot. He was referred to Texas Health Presbyterian of Denton, where he was admitted, diagnosed with cellulitis, and started on intravenous antibiotics. During a surgery two days later to debride the wound, Dr. Craig Glauser removed a 5 millimeter piece of wood and a 4 centimeter by 8 millimeter piece of wood from the wound

and irrigated and packed the wound.  C.H.'s condition improved, and the hospital discharged him on March 26, 2010.

Hatchel sued Hacker in May 2012 for medical negligence in connection with the treatment of C.H.'s foot, and she timely served Hacker with an expert report authored by R. Robert Ippolito, M.D.[2]  Hacker objected to Dr. Ippolito's report on several grounds and moved to dismiss Hatchel's claim.  The trial court granted the motion in part but also granted Hatchel a thirty-day extension to cure the deficiencies.  Hatchel filed an amended expert report authored by Dr. Ippolito, Hacker objected that Dr. Ippolito's opinions on breach and causation were conclusory and speculative and moved to dismiss Hatchel's claim, and the trial court granted the motion without specifying its reasons for doing so.

A plaintiff must serve an expert report for each physician or health care provider against whom a liability claim is asserted.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2013).  An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed.  *Id.* § 74.351(r)(6).  If a claimant timely furnishes an expert report, a defendant may

---

[2]Hatchel sued several other individuals and entities, but they are not parties to this appeal.

3

file a motion challenging the report's adequacy. *See id.* § 74.351(a), (b). A trial court must grant a motion to dismiss based on the alleged inadequacy of an expert report only if it finds, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in the statute. *Id.* § 74.351(*l*).

The information in the report does not have to meet the same requirements as evidence offered in a summary judgment proceeding or at trial, and the report need not marshal all the plaintiff's proof, but it must include the expert's opinions on each of the elements identified in the statute—standard of care, breach, and causation. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001); *Polone v. Shearer*, 287 S.W.3d 229, 233 (Tex. App.—Fort Worth 2009, no pet.). In detailing these elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort: (1) the report must inform the defendant of the specific conduct the plaintiff has called into question and (2) the report must provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879.

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Polone*, 287 S.W.3d at 232. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding

4

rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)*, cert. denied*, 476 U.S. 1159 (1986).

In part of her only issue, Hatchel argues that the trial court abused its discretion by granting Hacker's motion to dismiss because Dr. Ippolito's report adequately explained how Hacker breached the applicable standard of care. Dr. Ippolito opined that the standard of care for C.H.'s follow-up treatment on March 18, 2010, at the McLeroy, Gibbs & Klein Medical Clinic required (1) that his obviously infected wound be opened and fully debrided or (2) that he be referred to a qualified physician or facility to perform the debridement. In the portion of the report titled "Deviations from the Standards of Care," Dr. Ippolito wrote,

> The standard of care required Robert R. McLeroy, M.D., and/or Michelle Hacker to **open** and fully debride the wound when the patient presented with the symptoms listed as this is an obviously infected wound . . . .
>
> . . . .
>
> The records indicate that the wound was not opened at McLeroy, Gibbs & Klein Clinic. This is a deviation from the standard of care since the wound was draining purulence, infected, and required full debridement. Full debridement is the process of removing foreign material or dead tissue from and around a wound to expose health[y] tissue. Given the size of the pieces of wood ultimately found in the wound, *Nurse Hacker* should have been able to locate the wood in Mr. Hatchel's foot on either of the two visits to McLeroy, Gibbs & Klein Clinic. Failing to even open the wound in the face of such obvious signs of infection is a deviation from the standard of care in this case. [Emphasis added.]

5

Dr. Ippolito thus specifically opined that Nurse Hacker breached the applicable standard of care by failing to open and debride the wound.

Hacker directs us to our opinion in *Polone* and argues that the report does not specifically identify how she breached the standard of care because it does not differentiate between the standard of care applicable to her and the standard of care applicable to Dr. McLeroy, the supervising physician. *See Polone*, 287 S.W.3d at 233–35. *Polone* involved a failure-to-diagnose-cancer claim in which we held that the expert report inadequately set forth the applicable standard of care for a physician's assistant because the report identified identical standards of care for both the physician's assistant and a physician, and there was no specific recitation that the standards were identical. *Id.* Implicit in our reasoning was that in the absence of any indication otherwise, we were unable to conclude—based on the nature of the case and the facts involved—that the physician and the physician's assistant shared the same standards of care. *See id.* That same circumstance is not present in this case. The claim here alleges negligence for failing to open and clean a wound, not failing to diagnose cancer. It is impossible to read Dr. Ippolito's report and not conclude that the standard of care applicable to Hacker is the same standard of care applicable to Dr. McLeroy—whether the care was provided by a physician or a nurse

6

practitioner, the standard of care simply required that the infected wound be debrided.[3]

We also note that Hacker's second round of objections challenged Dr. Ippolito's opinions regarding breach and causation only. To the extent that Hacker so argues, we refuse to disregard an otherwise adequate recitation regarding breach on account of a purported inadequacy regarding an aspect of Dr. Ippolito's report that was not challenged in the trial court (standard of care). We sustain this part of Hatchel's first issue.

Hatchel argues in another part of her only issue that the trial court abused its discretion by granting Hacker's motion to dismiss because Dr. Ippolito's report adequately explained how Hacker's alleged failure to comply with the standard of care caused C.H.'s injuries or damages. There are no magic words required to establish causation. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002). But the report must explain the basis for the expert's causation opinions by linking the expert's conclusions to the alleged breach. *Id.*

In the portion of the report titled "Proximate Cause," Dr. Ippolito opined,

> In this case, the actions of Michelle Hacker in merely wiping off the outside of the wound and providing an additional antibiotic, and **not even opening the wound** to attempt to debride the wound at that time, allowed the infection to continue to grow and attack surrounding healthy tissue. . . .

---

[3]Indeed, the report states that the standard of care required Dr. McLeroy and Hacker "each" to open and debride the wound.

. . . .

>Mr. Hatchel's foot was likely saved by Dr. Glauser's correct decision to immediately debride the wound and begin IV antibiotics when Mr. Hatchel was finally sent to him two days after he was initially seen at the McLeroy, Gibbs & Klein Clinic. The two day delay allowed the infection to grow exponentially and certainly contributed to the increased length of [the] hospital stay, to the ultimate loss of tissue in Mr. Hatchel's left foot, which caused Mr. Hatchel to lose significant use of his foot and mobility for the following year. . . . This destruction is what caused the damage that Dr. Glauser had to repair. This destruction is what caused Mr. Hatchel's recovery time to be so prolonged. This destruction could have been entirely avoided if the wound had been completely debrided and all foreign objects removed as the standard of care required, as more fully explained above. [Emphasis in original]

Thus, Dr. Ippolito opined that while C.H. presented at the McLeroy, Gibbs & Klein Medical Clinic with an already-infected laceration, it was Hacker's failure to open and debride the wound that allowed the infection to grow exponentially, which caused the destruction of tissue in the foot, the need to surgically repair the destruction to the foot, and the loss of mobility and use of the foot that C.H. experienced over the next year. Hatchel thus adequately linked Hacker's alleged failure to meet the applicable standard of care to the injuries and damages that C.H. allegedly sustained.

Hacker likens this case to *Bowie* and argues that, at most, Dr. Ippolito's causation opinions (a) "are equivalent to a statement that [C.H.'s] injury might have been avoided or lessened if Nurse Practitioner Hacker had acted differently" and (b) are conclusory and require the court to draw inferences about the connection between Hacker's conduct and C.H.'s injuries. The portions of

8

the report above are not conclusory and do not require the court to make any inferences—it clearly factually alleges that by failing to open and debride the wound, Hacker allowed the infection to flourish, tissue was consequently damaged, and surgery was necessary to correct the damaged tissue.

Hacker contends that the report is insufficient because Dr. Ippolito did not "provide a baseline as to what would have resulted from the previous health care provider's care even had Nurse Practitioner Hacker done what the report said she should have done." But section 74.351 does not require Dr. Ippolito to speculate about what would have happened had Hacker *complied* with the standard of care; it requires Dr. Ippolito to explain how Hacker's *failure* to comply with the applicable standard of care caused C.H.'s injuries or damages. Dr. Ippolito did that—but for Hacker's failure to debride the wound, C.H. would not have required surgery to repair the tissue that was destroyed by the infection that flourished exponentially between the time that Hacker cared for C.H. and when he went to the hospital.

Hacker argues that Dr. Ippolito did not explain how failing to open the wound allowed the infection to grow, but he actually did just that: "[T]he foot is a closed space and the pus and exudate attendant to the infectio[n] causes tissue necrosis and ischemia as it has nowhere else to go." Hacker complains that she is not mentioned in several of the paragraphs that are relevant to Dr. Ippolito's opinion on causation, but the excerpts that we set out above specifically identify

9

her.  Hacker takes issue with the third to the last full paragraph of Dr. Ippolito's report, but that paragraph is not essential to Dr. Ippolito's opinion.[4]  We sustain this part of Hatchel's issue.

Dr. Ippolito's report represented an objective good faith effort to comply with the definition of an expert report.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*); *Palacios*, 46 S.W.3d at 879.  Accordingly, we hold that the trial court abused its discretion by granting Hacker's motion to dismiss Hatchel's health care liability claim.  We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED:  MAY 8, 2014

---

[4]We did not refer to it above.

10